Mark TAYLOR, Plaintiff,

v.

**DEPARTMENT OF EMPLOYMENT SE-
CURITY, INDUSTRIAL COMMISSION
of Utah, Defendant.**

No. 17843.

Supreme Court of Utah.

April 30, 1982.

Mark Taylor, pro se.

K. Allan Zabel, Sp. Asst. Atty. Gen., Salt Lake City, for defendant.

OAKS, Justice:

This is an action to review a decision of the Board of Review of the Department of Employment Security of the Utah Industrial Commission in a matter involving unemployment compensation.

■ The plaintiff in an action such as this bears a heavy burden. The statute states that "the findings of the commission and the board of review as to the facts if supported by evidence shall be conclusive and the jurisdiction of said [Supreme] Court shall be confined to questions of law." U.C.A., 1953, § 35–4–10(i). The meaning of this statute was explained in *Kennecott Copper Corp. Employees v. Department of Employment Security*, 13 Utah 2d 262, 264–65, 372 P.2d 987, 989 (1962), as follows:

> [T]he evidence is to be looked at in the light most favorable to the findings; and in so doing, *if there is evidence of any substance whatever which can reasonably be regarded as supporting the determination made, it must be affirmed* ....
> [Emphasis added.]

We reaffirm that standard of review, which has been employed, in substance, in numerous succeeding cases. *E.g., Box Elder County v. Industrial Commission*, Utah, 632

P.2d 839 (1981); *Continental Oil Co. v. Board of Review*, Utah, 568 P.2d 727 (1977); *Baker v. Department of Employment Security*, Utah, 564 P.2d 1126 (1977); *Whitcome v. Department of Employment Security*, Utah, 564 P.2d 1116 (1977); *Decker v. Industrial Commission*, Utah, 533 P.2d 898 (1975).

During the summer and early fall of 1979, plaintiff, an accountant, worked intermittently as a salesman at his family's home furnishings store. For the week ending June 23, plaintiff filed for and received unemployment compensation. Although he had earned commissions that week, he reported no earnings or hours worked. In subsequent weeks, plaintiff continued to understate his income. Plaintiff received $1,135 in unemployment compensation during this period, $530.36 more than he would have received if he had accurately reported his earnings.

Prior to its amendment effective July 1, 1979,[1] U.C.A., 1953, § 35–4–5(e) stated in pertinent part:

An individual shall be ineligible for benefits . . . :

\* \* \* \* \* \*

(e) For the week with respect to which he had . . . knowingly failed to report a material fact to obtain any benefit under the provisions of this act, and for the 51-week period immediately following and until he has repaid to the fund all money he received by reason of his fraud and which he received during such following 51-week disqualification period. . . .

In reliance upon this provision, and after finding that plaintiff "knowingly withheld material information to obtain unemployment benefits to which he was not entitled for the week ending June 23, 1979," an Appeals Referee of the Department ordered plaintiff to return to the Department $1,175: the $1,135 received during the week of June 23 and the subsequent 51-week period, plus an overpayment of $40 previously received by plaintiff because of a mistaken understatement of his earnings.

1. *See* Employment Security Act Amendments, ch. 137, § 3. 1979 Utah Laws 763, 770–71

The Board of Review of the Utah Industrial Commission adopted the Referee's findings and affirmed his decision.

Plaintiff has agreed to repay the $530.36 he was overpaid, but challenges the Department's ruling that he should, in addition, repay the $644.64 he would have received even if he had accurately reported his earnings. Plaintiff contends that the facts do not establish an intent to obtain benefits by willful misrepresentation. He argues that the earnings in question resulted from sales on isolated occasions when he happened to be visiting in the store and there were too few salesmen to wait on all the customers. He argues that he did not expect to be paid, that without his knowledge the store paid him on a commission basis, that his commissions were not received until several weeks after the sales, and that he reported only hourly wages on the unemployment claim form.

In the hearing before the Appeals Referee, plaintiff admitted that he never reported the commissions he received, and he offered no explanation for his failure to report them. When asked if it occurred to him that he had been overpaid unemployment benefits he responded, "I—you know, I work with numbers. It would seem reasonable that I should have realized it, but I can't really say that I realized it."

The absence of admission or direct proof of intent to defraud by knowingly failing to report a material fact does not prevent the conclusion that an applicant has violated § 35–4–5(e). In *Mineer v. Board of Review*, Utah, 572 P.2d 1364, 1366 (1977), we stated:

The intention to defraud is shown by the [unemployment] claims themselves which contain false statements and fail to set forth material facts required by statute. The filing of such claims evidences a purpose or willingness to present a false claim in order to obtain unlawful benefits and hence are manifestations of intent to defraud.

(codified at U.C.A., 1953, § 35–4–5(e) (Supp. 1981)).

Since the record on appeal contains copies of the plaintiff's reports that omit material facts, there is surely "evidence of substance" supporting the determination of the Board of Review, and it must therefore be affirmed. In so holding, we follow *Decker v. Industrial Commission, supra,* which involved remarkably similar facts. Costs to respondent.

HALL, C. J., and STEWART, HOWE and DURHAM, JJ., concur.