No. 87-397

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

ZIMMER-JACKSON ASSOCIATES, INC.,

Plaintiff and Appellant,

DEPARTMENT OF LABOR AND INDUSTRY,
and SAM AUSTIN,

Defendants and Respondents.

APPEAL FROM: District Court of the First Judicial District,
In and for the County of Lewis and Clark,
The Honorable Thomas C. Honzel, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

Stephen R. McCue, Harrison, Loendorf and Poston, P.C.,
Helena, Montana

For Respondent:

David Scott, Helena, Montana, (Department of Labor)
William J. O'Connor, II, Dunaway, O'Connor and Moe
Billings, Montana, (Sam Austin)

Submitted on Briefs: March 11, 1988

Decided: April 13, 1988

Filed: APR 1 3 1988

*Ethel M. Harrison*

Clerk

Mr. Justice William E. Hunt, Sr., delivered the Opinion of the Court.

This is an appeal from the Order of the District Court, First Judicial District, County of Lewis and Clark affirming the decision of the Board of Labor Appeals which held that the defendant/respondent was an employee of plaintiff/appellant for purposes of unemployment insurance.

We affirm.

The issues on appeal, restated, are:

1. Did the District Court err when it affirmed the Board's decision holding that respondent's commissions from appellant were wages for purposes of unemployment insurance tax?

2. Did the District Court err when it affirmed the Board's decision holding that respondent's relationship with appellant satisfied the test pursuant to § 39-51-203(4), MCA, (1983), sometimes referred to as the ABC test, therefore classifying him as an employee for purposes of unemployment insurance tax?

By letter of January 31, 1986, the Montana Department of Labor and Industry, Unemployment Insurance Division, determined that Zimmer-Jackson Associates, Inc. (ZJ) must report Austin's services to the Division and must pay unemployment insurance tax on those services. A hearing was held before an appeals referee of the Department who made findings of fact and concluded that Austin was an employee and not an independent contractor for purposes of the unemployment insurance tax. On appeal the Board of Labor Appeals adopted the findings of fact and decision of the

referee as its own. Upon petition for judicial review the District Court affirmed the decision of the Board.

The appellant, ZJ, is a distributor of medical equipment in seven western states including Montana. It is an independent agent of Zimmer USA (Zimmer) which manufactures medical equipment. From 1977 to 1985, respondent Austin was a sales associate for ZJ based in Billings and covering most of Montana. Austin was responsible for selling ZJ goods to various hospitals and clients in his area. The selling procedure for ZJ sales associates is uncomplicated. When an associate makes a sale, the order is sent to ZJ who then sends it to Zimmer. The equipment is sent to the customer who pays Zimmer directly. Both ZJ and the associate receive a percentage from the sale. The sales associate's commission is based upon a percentage of the associate's total sales as payment is received by Zimmer.

Austin maintained a Billing's office where he employed a secretary. As with all ZJ associates, a base rent was paid by ZJ on the office and phone. Basic office equipment was also provided by ZJ. The base amount is determined by the ZJ Board of Directors. Any expenses above that amount are the responsibility of the associate. An associate can hire support personnel such as a secretary providing that the position is approved by ZJ. The particular person hired is not required to be approved. While the salary is negotiated between the associate, ZJ and the secretary, ZJ pays that salary.

The territory covered by any one associate is set by ZJ. Modifications may be made at the associate's request. This was done in Austin's case when he complained about the geographical size of his Montana territory. Consequently ZJ allowed him to give up a portion of this territory for which he was compensated $8,000.00 in exchange for his part in

developing the territory and for the loss of possible future commissions from that portion of the territory.

An associate usually must comply with any contracts directly between his or her client and ZJ or Zimmer. An associate is allowed to sell below the contract price but may not sell above it. An associate is also allowed to make separate contracts with his or her clients. Any contract of this type had to be sent to Zimmer for approval. A contract that conflicted with Zimmer contracts was sent back to be redone by the associate. Efforts were always made to resolve the conflict.

Austin did a limited business with other companies for instrument sharpening. ZJ discouraged working for competitive companies but tolerated it as long as Austin's sales goals were met. Appellant disputes the finding by the referee that if an associate failed to meet his goals he would be fired unless he agreed to give up selling competitive products.

The standard of review the District Court must follow derives from § 39-51-2410(5), MCA, which states:

> In any judicial proceeding under 39-51-2406 through 39-51-2410, the findings of the board as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive and the jurisdiction of said court shall be confined to questions of law. Such action and the questions so certified shall be heard in a summary manner and shall be given precedence over all other civil cases except cases arising under the workers' compensation law of this state.

The operation of this statute has been well discussed in previous cases. When reviewing a decision of the Board of Labor Appeals, the District Court must treat the findings of the Board as conclusive if they are supported by substantial evidence and are absent fraud. Gypsy Highview Gathering

- 4 -

System v. Stokes (Mont. 1986), 716 P.2d 620, 623, 43 St.Rep. 595, 598; Kirby Co. of Bozeman v. Employment Sec. (1980), 189 Mont. 1, 5, 614 P.2d. 1040, 1042-3. This Court is held to the same standard when reviewing a Board of Labor Appeals decision. Gypsy Highview, 716 P.2d at 623. We must determine whether the District Court committed an abuse of discretion by affirming the Board's decision. Standard Chem. Mfg. Co. v. Employment Sec. (1980), 185 Mont. 241, 247, 605 P.2d 610, 613.

The pertinent statute defining employment is § 39-51-203(4), MCA (1983).

> (4) Service performed by an individual for wages is considered to be employment subject to this chapter unless and until it is shown to the satisfaction of the department that:
>
> (a) such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract and in fact;
>
> (b) such service is either outside the usual course of the business for which such service is performed or that such service is performed outside of all the places of business of the enterprise for which such service is performed; and
>
> (c) such individual is customarily engaged in an independently established trade, occupation, profession, or business.

Appellant asserts as its first issue that Austin's commissions did not constitute "wages" and, as such, his services do not fall within the purview of the above statute. Instead, appellant argues, Austin's commissions were netted with his expenses to create "profits." Austin's self-employed status, arguably, is bolstered by his tax returns of 1982-85 showing he paid self-employment tax.

Wages, for the purpose of unemployment insurance, are defined by § 39-51-201(19)(a), MCA (1983), as meaning "all remuneration payable for personal services, including commissions and bonuses and the cash value of all remuneration payable in any medium other than cash." This Court had the opportunity to address this issue in St. Regis Paper Co, Etc. v. Unemployment Comp. Com'n (1971), 157 Mont. 548, 487 P.2d 524. There we cited with approval National Trailer Convoy, Inc. v. Undercofler (Ga. 1964), 137 S.E.2d 328 in which the Georgia Supreme Court held, interpreting an identical statute, that because of the obvious existence of an independent contractor relationship between the parties no "wages" existed and therefore the ABC test did not apply. This Court also stated that although the statute is discretionary, it should not be so distorted as to cover relationships that are truly independent in nature. But, there is no such distortion in this case. Although we discuss it in greater depth below, we cannot say that there is an obvious independent contractor relationship here and therefore no wages as required by § 39-51-203(4), MCA. Austin received commissions on all Zimmer goods he sold. Section 39-51-203(4), MCA, plainly states that commissions are wages. Therefore Austin was receiving wages as defined in the statute and the ABC test must be applied. His tax treatment of these wages is not relevant.

Appellant, next and lastly, contends that none of the three tiers of the ABC test were met and specifically complains that its rights were prejudiced because the District Court failed to find facts which were requested. We disagree.

In order for a service to be deemed employment all three standards of § 39-51-203(4), MCA, (1983) must be met. Pat Griffin Co. v. Employment Security Com'n (1974), 163 Mont.

529, 533, 519 P.2d 147, 150 (Citing St. Regis, 487 P.2d at 525); Standard Chem., 605 P.2d at 612. As stated above the statue must be applied reasonably. Standard Chem., 605 P.2d at 612; St. Regis, 487 P.2d at 525.

Tier "A" of this three part test requires that an individual be free from control over the performance of his services. Section 39-51-203(4)(a), MCA. We have recognized that this is the most important factor in determining employment relationships and have often used the common law test for determining employment status in conjunction with the statute on this point. See Kirby Co. of Bozeman, 614 P.2d 1040; Standard Chem., 605 P.2d 610. The right of control figures most prominently in both tests. Standard Chem., 605 P.2d at 613.

The District Court relied upon the finding that Austin was required to have his sales contracts reviewed and approved by Zimmer and that ZJ determined the base amount paid for Austin's office rent and phone charges and Austin's secretary. It also relied upon the finding that Austin would have been fired if he were selling competitive products and his sales dropped below expected goals. ZJ contends that this finding is clearly erroneous and not supported by substantial evidence. The finding stems from the following exchange at the hearing between the appeals referee and the owner of ZJ concerning a sales associate who was selling competitive products:

> MARONICK: One question, Mr. Jackson. If he were not to do that, if he continued to sell both, Zimmer and the other, what action would you take, what's the agreement?
>
> JACKSON: The agreement is, if his sales fall below a certain level then I would probably terminate his relationship with us. If he could keep them at a high level, I wouldn't cut my nose off to spite my face.

- 7 -

The appeals referee found that:

> . . . if the Associate were selling competitive products and could maintain enough sales such selling would be permitted. If however, the competitive products were being sold and goals were not met the Associate would be fired if he insisted on continuing to sell the other products.

This Court fails to find any inconsistency between this finding and the owner's statement. The finding flows directly from the testimony given.

Appellant voices its dissatisfaction over the Board's failure to make certain findings, specifically that Austin was on the Board of Directors of ZJ; that Austin incurred business expenses; that Austin has made a separate claim for reimbursement of his expenses; that Austin paid self-employment tax from 1982 to 1985; that Austin's sales of products and services for other companies was directly competitive with ZJ's business; that Austin received no sales technique training from ZJ; and that Austin was not required to make periodic sales reports aside from year-end letters projecting expected sales for the coming year.

Although such findings would have made this issue a closer case, the findings actually made are sufficient to establish an employer-employee relationship. The evidence need not be a preponderance but only substantial and it is irrelevant that there may be substantial evidence for the opposition. Gypsy Highview, 716 P.2d at 623, citing Jordan v. Craighead (1943), 114 Mont. 337, 343, 136 P.2d 526, 528. Therefore we agree with the District Court's conclusion that ZJ had the right of control over Austin.

Part "B" of the ABC test requires that the nature of an individual's services falls outside the usual course of the employer's business or that the services be performed outside

the place where employer's business is carried on in order for him to avoid the label of employee.

First the Court notes that this is a little discussed provision that has been done away with by the 1987 legislature. See § 39-51-203(4), MCA, (1987) in conjunction with § 39-51-201(14), MCA, (1987).

Appellant argues that the relationship between Austin and ZJ can be analogized to automobile dealerships and fast food restaurant franchises and that an affirmance of the District Court on this point would result in classifying owners of these dealerships and franchises as employees. The District Court agreed with the appeals referee that:

> Without a sales force, Associates, the employer would have no units distributed upon which or from which their income is generated. Not only is the Associate in the normal course of the Employer's business, distribution of medical products, it is essential to that process.

The relationship in this case cannot be likened to that of a franchisor and its franchisee because an individual who works as a sales agent does not obtain the degree of license or privilege that an individual who is given a franchise has. A franchise is a property right that implies more of an independence of business operations between the franchisee and the main company than exists between a sales agent and his supplier. We see no abuse of discretion in the District Court's adoption of the appeal referee's finding.

The last element of the ABC test requires that the individual be customarily engaged in an independently established trade or occupation. In Standard Chem. we adopted several criteria from other jurisdictions with similar statutes to help us decide whether livestock product sales agents were employees or independent contractors hired by the manufacturer. See Stendard Chem., 605 P.2d at 614-15.

Some of the relevant criteria include: (1) worker's authority to hire subordinates, (2) worker's ownership of equipment, (3) liability for a preemptory termination of the business relationship, (4) ability of worker to survive the termination of a particular service relationship, and (5) worker's ability to engage in activity without hinderance from anyone implying a "proprietary interest."

After review of the record we conclude that this test was also met. Austin could not provide for a secretary without ZJ's prior approval of the position. His office equipment was owned by ZJ. Although he did some slight business with other companies, Austin could not survive the termination of his relationship to ZJ. As discussed above, he was controlled by ZJ in many aspects of his activities.

There has been no finding regarding liability for preemptory termination but in view of the other findings above it is unnecessary.

There is sufficient evidence to find that all three standards of the ABC test have been met. Accordingly, we hold that the District Court did not abuse its discretion in affirming the Board of Labor Appeal's determination that Austin was an employee of ZJ. Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

- 10 -

_R. C. McDonough_

_John G. Sheehy_

_P. C. Gullbrandson_

Justices